**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


SAMPSON BRUNSON,                    )
                                    )
                    Petitioner,     )
                                    )
          v.                        )        1:11CV241
                                    )
MICHAEL T. BELL,                    )
                                    )
                    Respondent.     )


**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Petitioner, a prisoner of the State of North Carolina, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Docket Entry 2.) On April 22, 2005, in the Superior Court of Guilford County, a jury found Petitioner guilty of first-degree rape, possession of a firearm by a felon, assault with a deadly weapon inflicting serious injury, first-degree kidnapping, and being a violent habitual felon in cases 03 CRS 24549, -78628, -78629, -78636, and -24401. (<u>Id.</u>, ¶¶ 1, 2, 5, 6; Docket Entry 6, Ex. 1 at 19-23, 26-33.) Petitioner received a sentence of three terms of life imprisonment without the possibility of parole for the rape, assault, and kidnapping convictions and 20-24 months of imprisonment for the possession of a firearm by a felon conviction. (Docket Entry 2, ¶ 3; Docket Entry 6, Ex. 1 at 26-33.)

Petitioner unsuccessfully pursued a direct appeal. <u>State v. Brunson</u>, 180 N.C. App. 188, 636 S.E.2d 202 (2006), <u>dismissed in part and denied in part</u>, 361 N.C. 431, 648 S.E.2d 848, and <u>aff'd</u>, 362 N.C. 81, 653 S.E.2d 144 (2007). Petitioner also made multiple attempts at obtaining collateral relief in the state courts.

(Docket Entry 2, ¶ 11.)  First, on January 15, 2008, Petitioner filed a motion for appropriate relief in the trial court.  (Id., ¶ 11(a)(1)-(4); Docket Entry 6, Ex. 8, App'x at 14.)  That motion was denied (Docket Entry 2, ¶ 11(a)(7); Docket Entry 6, Ex. 8, App'x at 24), as was a subsequent petition for certiorari to the North Carolina Court of Appeals (Docket Entry 6, Ex. 10).  Petitioner then filed a second motion for appropriate relief, as well as motions seeking to locate and preserve evidence and for DNA testing of the evidence.  (Docket Entry 2, ¶ 11(c)(1)-(4); Docket Entry 6, Exs. 11-13.)  Those motions were denied on January 21, 2011.  (Docket Entry 2, ¶ 11(c)(7) & (8).)  Petitioner then filed his current Petition in this Court.

Following the filing of the Petition, the Court ordered a response.  (Docket Entry 3.)  Respondent then submitted both an Answer (Docket Entry 4) and a Motion for Summary Judgment (Docket Entry 5).  Despite notice from the Court of his right to respond (Docket Entry 7) and two extensions of time to respond (Text Order entered June 30, 2011; Docket Entry 11), Petitioner did not file a timely response.

## I.  Facts

The basic facts underlying Petitioner's convictions, as summarized by the North Carolina Court of Appeals, are as follows:

> Sampson Brunson (Defendant) was a next-door neighbor of the alleged victim in this case in March 2003. Defendant and the victim had lived next to one another for about a year. They had a friendly and familiar relationship. At trial, the victim testified that she thought of Defendant as a "grandfather figure," and that Defendant was "sweet," "friendly," and "nice" to her children. The victim also stated that Defendant frequently drove her to

work. In contrast, Defendant testified at trial that in addition to their relationship as neighbors and friends, he and the victim had eventually begun a sexual relationship.

It is undisputed that on 15 March 2003, Defendant picked up the victim from work. The victim testified that when Defendant picked her up, he was upset because a woman he cut grass for had not paid him enough, and that he was also mad because the victim had neglected to call Defendant the night before. The victim stated that Defendant continued to mutter for some time, and then pulled out a silver-colored gun, putting it to the victim's head as he continued to drive. Eventually, around dusk, the victim stated that Defendant drove into a deserted area that appeared to be out "in the wilderness." The victim testified that after driving down an isolated road, Defendant forced her out of the truck and began beating her with his hands and feet. The victim stated she suffered "pain ... all over." Defendant later forced the victim back into the truck, at which time she lost her hair bow.

The victim testified that Defendant then drove farther into the woods, and in the process, broke off a side mirror of his truck on a tree limb. She further testified that Defendant parked the truck and demanded that she take off her clothes. The victim refused to do so, and Defendant tore off her clothes. Defendant began to kiss and fondle the victim, eventually penetrating her with his penis by force.

The victim stated that Defendant then apologized, but said he would have to kill her to avoid going back to jail. In response to the victim's pleas, Defendant changed his mind and told her that he loved her. The victim said she and Defendant then got back into the truck. They drove to her mother's house, where they picked up her son. Defendant then drove the victim and her son home.

The victim told no one of the incident for the next two days. On 17 March 2003, the victim went to work and confided in her sister, who worked at the same place. Her sister took her to the hospital, where a full rape kit was performed and where the victim was interviewed by police.

Police took the victim the following day back to the scene of the crime, where they discovered physical evidence including her lost hair bow, pieces of the

truck's mirror and reflector lights, and a matchbook
cover. Police arrested Defendant on 18 March 2003.

Brunson, 180 N.C. App. at 189-90, 636 S.E.2d at 203-04.

## II. Petitioner's Claims

The Petition raises the following four claims for relief:

1) the destruction of DNA evidence from his case violated his
due process rights (Docket Entry 2, ¶ 12, Ground One);

2) Petitioner's attorney provided ineffective assistance
because he did not "follow up on [an] exculpatory report regarding
Petitioner['s] semen samples" and because he did not prevent an
instruction to the jury "that the actual emission of semen is not
nessary [sic] on the first element" of the rape charge (id., Ground
Two);

3) "[t]here was insufficient of [sic] evidence to convict the
Petitioner of rape beyond a reasonable doubt" because of the
absence of "blood, semen, or DNA linking him to a rape" (id.,
Ground Three); and

4) "[t]here was insufficient of [sic] of evidence to convict
the Petitioner of [assault with a deadly weapon inflicting serious
injury]" because the trial court instructed the jury that it could
consider the size of Petitioner's fist, but the jury received no
evidence about the size of his fist (id., Ground Four).

## III. Discussion

### A. Claim One

Petitioner's first claim for relief asserts a violation of his
due process rights occurred when the State destroyed DNA evidence
in his case.  (Id., Ground One.)  Respondent correctly argues that

-4-

Petitioner did not raise this claim in the state courts, which means he did not exhaust his state court remedies as required by 28 U.S.C. § 2254(b)(1)(A). (Docket Entry 6 at 4-5.) In order to exhaust his state court remedies, a petitioner must allow "the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights . . . [by] fairly present[ing] his claim in each appropriate state court, thereby alerting that court to the federal nature of the claim." <u>Jones v. Sussex I State Prison</u>, 591 F.3d 707, 712 (4th Cir. 2010) (internal quotation marks and ellipses omitted) (quoting <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004)). He also "must raise his claim before every available state court, including those courts . . . whose review is discretionary." <u>Id.</u> at 713 (citing <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 847 (1999)). Although Petitioner did file a post-trial motion seeking to have DNA testing performed, he never raised a claim in the state courts based on the destruction of evidence.

Respondent further argues that, if Petitioner returned to the state courts to exhaust this claim through another motion for appropriate relief, he would face mandatory imposition of the procedural bar under N.C. Gen. Stat. § 15A-1419(a)(1), (a)(3), and (b). (Docket Entry 6 at 4-5 (citing, inter alia, <u>Rose v. Lee</u>, 252 F.3d 676, 683 (4th Cir. 2001)).). Where, as here, a habeas petitioner would find his unexhausted claim subject to a mandatory procedural bar if he returned to state court for exhaustion, a federal procedural bar to habeas review arises. <u>Breard v. Pruett</u>, 134 F.3d 615, 619 (4th Cir. 1998) (citing <u>Coleman v. Thompson</u>, 501

U.S. 722, 735 n.1 (1991)).  In light of that procedural bar, Petitioner must demonstrate either cause and prejudice for his procedural default or must establish that this Court's refusal to address his claim will result in a miscarriage of justice.  See Longworth v. Ozmint, 377 F.3d 437, 447-48 (4th Cir. 2004). Petitioner has made no argument on this point and no grounds for excusing the default appear in the record.

Finally, even if Petitioner had properly exhausted this claim, it could not succeed.  Except in very limited circumstances (absent here), "habeas corpus cannot be used as a vehicle to create new constitutional rules of criminal procedure," Teague v. Lane, 489 U.S. 288, 316 (1989).  As Respondent has pointed out, the United States Supreme Court has recognized a due process right against bad faith destruction of "potentially useful evidence."  (Docket Entry 6 at 5 (citing Arizona v. Youngblood, 488 U.S. 51, 56-58 (1988)).) However, the rule in Youngblood does not address the destruction of evidence after trial and/or affirmance of a conviction on direct appeal, as alleged here.  Extension of Youngblood's rule in the present situation likely would violate Teague.  See Ferguson v. Roper, 400 F.3d 635, 638 (8th Cir. 2005) (refusing to apply Youngblood to post-conviction destruction of evidence); see also Lovitt v. True, 403 F.3d 171, 187 (4th Cir. 2005) (noting without deciding that extension of Youngblood beyond a pretrial setting in habeas case "might" violate Teague).

Finally, even if the Court did apply Youngblood to Petitioner's case, he still could not prevail.  The state court

order denying Petitioner's motion for DNA testing states that the evidence was destroyed as a matter of course pursuant to a court order after Petitioner's direct appeal ended. (Docket Entry 2, Ex. 1.) Petitioner has pointed to nothing that would call that conclusion into question or that would suggest bad faith on the part of authorities in destroying the evidence.

For all of these reasons, Petitioner's first claim for relief fails as a matter of law.

### B. Claims Two and Three

Petitioner's second claim for relief asserts that his attorney did not "follow up" on an allegedly exculpatory report on Petitioner's semen samples and that his attorney failed to stop the trial court from instructing the jury that the first element of the rape charge lacked any requirement of emission of semen. (Id., ¶ 12, Ground Two.) Petitioner's third claim challenges the sufficiency of the evidence to convict him of rape due to the absence of blood, semen, or DNA evidence.

Petitioner did not raise these two claims on direct appeal or in his first motion for appropriate relief, but rather only in his second motion for appropriate relief. (Docket Entry 6, Ex. 11.) The state trial court then denied them, not on the merits, but instead as procedurally barred under state law, based on the fact that Petitioner could have raised them on appeal or in his first motion for appropriate relief, but did not do so. (Docket Entry 2, Ex 2.) The procedural bar invoked by the state trial court arises under N.C. Gen. Stat. § 15A-1419(a), which bars claims that a

petitioner could have raised in a prior appeal or motion for appropriate relief, but did not. Absent cause and prejudice or a miscarriage of justice, a federal court may not collaterally review constitutional claims when a state court has declined to consider their merits on the basis of an adequate and independent state procedural rule. See Harris v. Reed, 489 U.S. 255, 262 (1989). A procedural rule under which the state court has declined to consider the merits of a petitioner's claims qualifies as adequate if state courts regularly or consistently apply it, Johnson v. Mississippi, 486 U.S. 578, 587 (1988), and as independent if it does not "depend . . . on a federal constitutional ruling," Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

The Fourth Circuit "has consistently held . . . that § 15A-1419 is an adequate and independent state-law ground for decision foreclosing federal habeas review." Boyd v. French, 147 F.3d 319, 332 (4th Cir. 1998) (citing, inter alia, Williams v. French, 146 F.3d 203, 208-09 (4th Cir. 1998), and Ashe v. Styles, 39 F.3d 80, 87-88 (4th Cir. 1994)). Accordingly, absent a showing of either cause and prejudice for the procedural default or that this Court's refusal to address the claim(s) on the grounds of procedural default would result in a miscarriage of justice, this Court may not consider Petitioner's second and third claims for relief. Petitioner does not even argue cause and prejudice or miscarriage of justice in his Petition. He has also not responded to Respondent's Motion for Summary Judgment with any argument against the application of the procedural bar. Nor does the record

reveal any reason for the Court to decline to apply the bar. The Court thus should deny Petitioner's second and third claims as procedurally barred.

## C. Claim Four

Petitioner did raise and did exhaust in the state courts his fourth claim for relief, which alleges that insufficient evidence supported his conviction for assault with a deadly weapon inflicting serious injury because the trial judge allowed the jury to consider the size of Petitioner's fists despite the lack of evidence from which the jury could have determined his fist size. (Docket Entry 2, ¶ Ground Four.) The North Carolina Court of Appeals rejected this same basic contention. See Brunson, 180 N.C. App. at 192-93, 636 S.E.2d at 205.

Where the state courts adjudicated a petitioner's claims on their merits, this Court must apply 28 U.S.C. § 2254(d)'s highly deferential standard of review to such claims.[1] That statute precludes habeas relief in cases where a state court has considered a claim on its merits unless the decision was contrary to or involved an unreasonable application of clearly established federal law as set out by the United States Supreme Court or the state court decision was based on an unreasonable determination of the facts. A state court decision is "contrary to" Supreme Court precedent if it either arrives at "a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts

---

[1] The deferential standard applies even where the state court does not cite federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that of the Supreme Court. <u>Williams v. Taylor</u>, 529 U.S. 362, 406 (2000). A state decision "involves an unreasonable application" of Supreme Court law "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." <u>Id.</u> at 407. "Unreasonable" does not mean simply "incorrect" or "erroneous" and the federal court must assess the state court's decision from an objective standpoint. <u>Id.</u> at 409-11. As for questions of fact, state court findings of fact are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A claim, such as this one, alleging insufficiency of the evidence cannot succeed in a habeas corpus action if, "after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in the original). A court reviewing the sufficiency of the evidence "must consider circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." <u>United States v. Tresvant</u>, 677 F.2d 1018, 1021 (4th Cir. 1982). "[C]ircumstantial evidence may support a verdict of guilty, even though it does not exclude every reasonable hypothesis consistent with innocence."

<u>United States v. George</u>, 568 F.2d 1064, 1069 (4th Cir. 1978). Taking the dictates of § 2254(d) into account, the key question becomes "whether a state court determination that the evidence was sufficient to support a conviction was an objectively unreasonable application of the standard enunciated in <u>Jackson</u>." <u>Williams v. Ozmint</u>, 494 F.3d 478, 489 (4th Cir. 2007) (internal brackets and quotation marks omitted).

In addressing Petitioner's fourth claim, the North Carolina Court of Appeals stated:

> Finally, Defendant contends the trial court erred in denying his motion to dismiss the charge of assault with a deadly weapon inflicting serious injury. Defendant argues there was insufficient evidence to support his conviction.
>
> This [c]ourt has recently considered a very similar case, in which we stated:
>
> > When ruling on a motion to dismiss, the trial court must "'consider whether the State has presented substantial evidence of each essential element of the crime charged.'" The trial court further must interpret the evidence in the light most favorable to the State, "drawing all reasonable inferences in the State's favor."
>
> <u>State v. Lawson</u>, 173 N.C. App. 270, 279, 619 S.E.2d 410, 415 (2005) (citations omitted), <u>disc. review denied</u>, 360 N.C. 293, 629 S.E.2d 276 (2006). In <u>Lawson</u>, this Court also dealt with a motion to dismiss a charge of assault with a deadly weapon inflicting serious injury. The <u>Lawson</u> court listed the essential elements of the crime: "By statute, the essential elements of assault with a deadly weapon with intent to inflict serious injury are (1) an assault; (2) with a deadly weapon; (3) inflicting serious injury; (4) not resulting in death." <u>Id.</u> at 279, 619 S.E.2d at 415-16 (citing N.C. Gen. Stat. § 14-32(b) (2004); <u>State v. Aytche</u>, 98 N.C. App. 358, 366, 391 S.E.2d 43, 47 (1990)). In his brief, Defendant attacks two of these elements: the requirement of a deadly weapon and the infliction of serious injury.

As in the present case, the defendant in <u>Lawson</u> argued
that his hands and feet could not be considered deadly
weapons. The <u>Lawson</u> court disagreed, noting this Court's
previous decisions holding that "a defendant's fists can
be considered a deadly weapon depending on the manner in
which they were used and the relative size and condition
of the parties." <u>Lawson</u>, 173 N.C. App. at 279, 619
S.E.2d at 416 (emphasis omitted) (citing <u>State v. Rogers</u>,
153 N.C. App. 203, 211, 569 S.E.2d 657, 663 (2002), <u>disc.
review denied</u>, 357 N.C. 168, 581 S.E.2d 442 (2003); <u>State
v. Krider</u>, 138 N.C. App. 37, 530 S.E.2d 569 (2000); <u>State
v. Grumbles</u>, 104 N.C. App. 766, 771, 411 S.E.2d 407, 410
(1991); <u>State v. Jacobs</u>, 61 N.C. App. 610, 301 S.E.2d
429, <u>disc. review denied</u>, 309 N.C. 463, 307 S.E.2d 368
(1983); <u>State v. Archbell</u>, 139 N.C. 537, 51 S.E. 801
(1905)). Defendant concedes there was great disparity in
height between Defendant and the victim. Defendant, at
6' 5", stands a foot and a half taller than the victim,
who is 4' 11". Defendant argues, however, that there is
nothing in the record to indicate their respective
weights. Moreover, he argues that the jury, having
received the trial court's original instruction to
"consider the nature of the size of the fists, the manner
in which they were used, and the size and strength of
[Defendant] as compared to [the victim][,]" asked the
trial court for further instruction. The trial court
responded, "There's no formula. It's just a question of
evaluating those things and making a factual decision in
light of your reason and common sense as to whether
[Defendant] used his hands and fists as a deadly weapon."
Though Defendant argues the trial court's response left
the jury to decide the issue without any meaningful
guidance, we disagree. The jury was given the proper
standard, as outlined in <u>Lawson</u>. In keeping with its
role as finder of fact, the jury came to the conclusion
that, in this case, Defendant's hands were deadly
weapons.

<u>Brunson</u>, 180 N.C. App. at 192-93, 636 S.E.2d at 205.

The North Carolina Court of Appeals' foregoing decision was
neither contrary to, nor an unreasonable application of, <u>Jackson</u>.
Further, said court did not base its decision on unreasonably
determined facts. Accordingly, Petitioner's fourth claim for
relief falls short under Section 2254(d).

**IT IS THEREFORE RECOMMENDED** that Respondent's Motion for Summary Judgment (Docket Entry 5) be granted, that the Petition (Docket Entry 2) be denied, and that Judgment be entered dismissing this action.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

January 30, 2014